

LISA J. RODRIGUEZ, NEW JERSEY MANAGING PARTNER

WOODLAND FALLS CORPORATE PARK

220 LAKE DRIVE EAST   SUITE 200   CHERRY HILL, NJ 08002-1165

856.482.5222   FAX 856.482.6980   schnader.com

LISA J. RODRIGUEZ
856- 482-2578 - Direct Fax
ljrodriguez@schnader.com

March 22, 2019

**VIA ECF**

Honorable James B. Clark, III, U.S.M.J.
U.S. District Court for the District of New Jersey
Frank R. Lautenberg U.S. Post Office and
Courthouse
1 Federal Square
Newark, New Jersey  07102

      **Re:**    *Indecs Corp. and Wirerope Works, Inc. v. Claim Doc, LLC*
            **Civil Action No. 2:16-cv-4421 (KM-JBC)**

Dear Judge Clark:

I write to address two issues in advance of the scheduled April 9, 2019 status conference before your Honor.

The first issue is to advise the Court that it appears that the parties do not have an agreement to settle the claims against Wirerope Works. Following the mediation with Your Honor, Claim Doc prepared a settlement agreement containing the agreed-upon terms and circulated it to counsel for Wirerope Works. The Court will recall that the parties agreed to settle all claims against Wirerope Works. Wirerope's counsel, however, now claims that the parties agreed to settle and release not only all claims against Wirerope Works, but also some claims against Indecs. Claims against INDECS were never a part of the settlement discussed during the mediation and Claim Doc has rejected Wirerope Works attempts to expand the terms of the agreed upon settlement. Claim Doc is still willing, however, to proceed with the settlement of all Wirerope claims.

The second issue is the scope of the 30(b)(6) deposition subpoena served by INDECS and Wirerope Works.  (Exhibit 1)  Ben Krambeck is the appropriate corporate designee.  Mr. Krambeck, who lives and works in Iowa, has already travelled to Philadelphia, PA and sat for a previously noticed 7 hour deposition. Plaintiffs asked about, or had the opportunity to ask about, all of the topics listed in plaintiffs' new 30(b)(6) notice, which they are now using as a guise to redepose Mr. Krambeck.

As the chart below shows, the noticed topics are not new, have been previously addressed, and rely on documents that were already in plaintiffs' possession at the time of Mr. Krambeck's deposition.  They also are not topics that are related to the breach of contract cause

Honorable James B. Clark, III, U.S.M.J.
March 22, 2019
Page 2

of action against INDECS that Claim Docs included in the Amended Counterclaim.   The
relevant deposition pages and exhibits are attached as Exhibit 2.

| 30(b)(6) Topic | May 2017 Krambeck Testimony |
|---|---|
| 1. Any communication dated May 11, 2016 from any employee, member, or officer of Claim Doc, LLC to Wirerope Works, Inc. | Testimony: 63:5-63:10; 122:6-126:15; 169:18-170:14<br>Exhibit: Krambeck 20 |
| 2. Any limitation imposed on David Fishbone from competing with Claim Doc, LLC effective prior to March 10, 2016 | Testimony: 21:24-23:1 |
| 3. Any January 2016 meeting between Mike Shine, David Fishbone, and representatives from Wirerope Works, Inc. | Testimony: 73:15-79:24<br>Exhibit:  Krambeck-13 |
| 4. Any right of Claim Doc, LLC, to recover BCR's fees for the 2017-2018 plan year for Wirerope Works, Inc. | Testimony:  179:21-180:23; 186:3-188:22[1]<br>Exhibits:  Krambeck-11; Krambeck-30 |
| 5. Any Administrative Services Agreement relating to Wirerope Works, Inc., INDECS Corp., and/or Claim Doc, LLC including but not limited to the documents produced at DEF 3889-3891, DEF 3901-3931, and DEF 4493-4497. | No testimony.  However, the cited documents were produced by plaintiffs[2] in advance of the Krambeck deposition, and therefore plaintiffs could have deposed Mr. Krambeck about them. |

Claim Doc is prepared to file a Motion for a Protective Order and seeks leave of this
Court to do so.

---

[1]     The issue of BCR's fees for the 2017-18 plan year was also a topic of Mike Shine's
testimony in July 2017.  Shine Dep. Tr. 200:10-201:6.

[2]     Presumably due to an administrative error on plaintiffs' part, documents produced by
plaintiffs bear the Bates prefix DEF. .

Schnader
ATTORNEYS AT LAW

Honorable James B. Clark, III, U.S.M.J.
March 22, 2019
Page 3


 In the event the Court denies our request to be permitted leave to file a Motion for a Protective Order, Claim Doc requests that the Court order that the deposition take place in Iowa rather than requiring Mr. Krambeck to incur the time and expense of a second trip to Philadelphia, PA.

Respectfully,


/s Lisa J. Rodriguez
Lisa J. Rodriguez
For SCHNADER HARRISON SEGAL & LEWIS LLP

LJR/mpw
Enclosure
Attachments

**EXHIBIT 1**

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **INDECS CORP., and WIREROPE WORKS, INC.,** : | |
| : | |
| *Plaintiffs* : | |
| : | |
| v. : | No. 16-4421 (KM)(JBC) |
| : | |
| **CLAIM DOC, LLC** : | |
| : | |
| *Defendant* : | |
| : | |

### <u>NOTICE OF ORAL DEPOSITION</u>

TO:    Lisa Rodriguez, Esquire
Courtney Devon Taylor, Esquire
Schnader Harrison Segal & Lewis, LLP
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, NJ  08002

     **PLEASE TAKE NOTICE** that in accordance with Rule 45 of the Federal Rules of Civil

Procedure, the testimony of **a corporate designee of Defendant Claim Doc, LLC,** will be taken

by oral deposition upon examination before a person authorized by the laws to administer oaths in

the State of New Jersey on **Wednesday, April 3, 2018** at **10:00 a.m.** at Bochetto & Lentz, P.C.,

1524 Locust St., Philadelphia, PA 19102 with respect to the matters set forth on Exhibit A hereto:

                                  **BOCHETTO & LENTZ, P.C.**

Date: 3/20/19               By:   */s/ John O'Connell*
                               John O'Connell, Esq.

IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **INDECS CORP., and WIREROPE WORKS, INC.,** | : | |
| | : | |
| *Plaintiffs* | : | |
| | : | |
| v. | : | No. 16-4421 (KM)(JBC) |
| | : | |
| **CLAIM DOC, LLC** | : | |
| | : | |
| *Defendant* | : | |
| | : | |

## EXHIBIT A

1. Any communication dated May 11, 2016 from any employee, member, or officer of Claim Doc, LLC to Wirerope Works, Inc.;

2. Any limitation imposed on David Fishbone from competing with Claim Doc, LLC effective prior to March 10, 2016;

3. Any January 2016 meeting between Mike Shine, David Fishbone, and representatives from Wirerope Works, Inc.;

4. Any right of Claim Doc, LLC, to recover BCR's fees for the 2017-2018 plan year for Wirerope Works, Inc.;

5. Any Administrative Services Agreement relating to Wirerope Works, Inc., INDECS Corp., and/or Claim Doc, LLC, including but not limited to the documents produced at DEF 3889-3891, DEF 3907-3931, and DEF 4493-4497.

## CERTIFICATE OF SERVICE

I, John O'Connell, Esq., hereby certify that I caused a true and correct copy of the

foregoing Deposition Notice to be served upon the following counsel, via email to the following:

Lisa Rodriguez, Esquire
David Smith, Esquire
Courtney Devon Taylor, Esquire
Schnader Harrison Segal & Lewis, LLP
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, NJ 08002
lrodriguez@schnader.com
dsmith@schnader.com
ctaylor@schnader.com

**BOCHETTO & LENTZ, P.C.**

Date: 3/20/19                    By:   */s/ John O'Connell*
                                       John O'Connell, Esq.

**EXHIBIT 2**

PHDATA 6793798_1



Claim-Doc, LLC
110 SW Albany Ave, Suite 210
Stuart, Florica 34994
www.claim-doc.com
888-330-7295

May 11, 2016

Wirerope Works, Inc.
Attn:  Harold C. Kropp, Jr.
100 Maynard Street
Williamsport, PA 17701

RE: Claim DOC Intent to Terminate

Dear Harold:

Yesterday you notified me of your intention not to renew the Wirerope Work's health benefit plan with BCR for the upcoming plan year.  Although we are disappointed to lose your loyal business, we wish you the best of luck in the future.

Pursuant to a separate Joinder Agreement, you had also contracted with Claim DOC, LLC for its claim audit and review services.  This letter is to notify you pursuant to Paragraph 10(a) of the Claim DOC – INDECS Service Agreement ("Agreement for Claims Review, Audit, and Negotiation Services") and the associated Claim DOC-INDECS-Wirerope Works Joinder Agreement of Claim DOC's intent to terminate this Agreement and election not to renew.  Thus, this Agreement will terminate sixty-days from the date of this letter, July 2, 2016.

The services under this Agreement will continue until July 2, 2016, including:

(1) Balance bill defense
(2) Response to Referred Appeals stemming from a Referred Health Benefit Claim
(3) Auditing services for Referred Health Benefit Claims with Dates of Service prior to July 2, 2016

Of course, any fees will be owed for these services.  As previously discussed, Amy Pellegrin is working to provide you with documentation from the court system to provide to your employees affected by last year's litigation to reassure them these matters are closed.  We will follow through on that promise.

After July 2, 2016, we will continue to respond to any Referred Appeals beyond the date of termination for those Claims that were audited pursuant to the Agreement, even if the Appeal itself is served on us after the date of termination.  However, following July 2, 2016, pursuant to the terms of the Agreement, we will no longer provide balance bill representation or continue to



EXHIBIT
20
Kramber
5/31/17

CD 0001109



represent those members with balance bills that remain pending.  Until this time, we will assist you in attempting to resolve these matters.

Thank you for your business and best of luck to you in the future.


Sincerely,


Ben Krambeck, CEO
Claim DOC, LLC
100 SW Albany Ave, Suite 200
Stuart, FL 34994

Claim-Doc, LLC
110 SW Albany Ave, Suite 210
Stuart, Florida  34994
www.claim-doc.com
888-330-7295

5/11/2016

page 2 of 2

CD 0001110

**Wirerope Works / Indec Meeting Minutes – 1/11/16 8:30 AM**

*January 11, 2015*

| | |
|---|---|
| *Present:* | Wirerope Works: |
| | Lamar Richards, Harold Kropp, Roger Gilliland, Donna Fuller Marybeth Carpenter |
| | Indec: Mike Shine and David Fishbone |
| *Next meeting:* | 1/22/18 8:30 AM if needed by phone. |

---

I. **Announcements**

- New Indec product announcement "Claim Watcher" – provides same service as Claim Doc but managed and operated by Indec. This is an expansion of services provided by our TPA for future consideration.
- Indec would like to assist our employees who are reaching stop loss proportions by contacting them and discussing health issue and options of treatment ect. It was explained that our contracts require we offer large case management and that we as the employer can require employees to participate in such services inside the next insurance binder.

II. **Discussion**

- Review of current issues and request for action.
    - o Durable Medical Goods – We are within a week of closing a deal with a provider for contract rates. The provider will supply on emergency and routine basis medical goods to our employees
    - o **Action** – Dave will be signing contract this week with a new provider that will then be offered to us. Dave and Mike will let us know how things have worked out. - 1/18/15
- Review Out of Pocket Charges for services outside employees control.
    - o Quest Labs through Family Practice and other approved providers are out of our members control, what can we do to change this?
    - o **Action** – Mike have Index fix this issue in support of our members who have no control over this situation? - 1/22/16
    - o Correct charges from Quest Lab and other providers who are out of network by the choice of in network provider or is controlled by situation at the time of service. - 1/22/16
    - o Report back to Wirerope Insurance Team solution before implementation. – 1/22/16
- Evangelic Hospital contact needed to pursue agreement on balanced bills and future treatment for members.
    - o Lamar to provide Mike Shine with contact information. – 1/18/16

III. **Roundtable**

- Discussed having regular meetings to review reports, issues, cost saving measures. Sharing of industry trends and local market conditions for expansion of viable providers and participants.
- The expectations of members is that we continue to work together to improve communication and understanding of the issues we face.

EXHIBIT
13
Keohubeck
5/31/17
BENGUD 800-631-6989

CONFIDENTIAL

DEF 004842

SCHNADER HARRISON SEGAL & LEWIS LLP
A Pennsylvania Limited Liability Partnership
LISA J. RODRIGUEZ, ESQUIRE
New Jersey Managing Partner
DAVID SMITH, ESQUIRE
COURTNEY DEVON TAYLOR, ESQUIRE
Woodland Falls Corporate Park
220 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002-1165
Phone: 856-482-5222 ▪ Fax: 856-482-6980

*Attorneys for Defendant/Counterclaim Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| INDECS CORP. AND WIREROPE WORKS, INC., | |
| *Plaintiffs and Counterclaim Defendants,* | Civil Action No. 2:16-cv-04421-KM-JBC |
| v. | |
| CLAIM DOC, LLC, | |
| *Defendant and Counterclaim Plaintiff.* | |

### DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT
### WITH COUNTERCLAIM

Defendant Claim Doc, LLC ("Claim Doc"), by and through its attorneys,

Schnader Harrison Segal & Lewis LLP, submits the following Answer, Affirmative Defenses, and

Counterclaim in response to the Complaint of plaintiffs INDECS Corp. ("INDECS") and

Wirerope Works, Inc. ("Wirerope").

### ANSWER

1.      Claim Doc denies the allegations in paragraph 1 of the Complaint.



2.      Claim Doc denies the allegations in paragraph 2 of the Complaint as stated, and refers to the June 1, 2015 Agreement for Claims Review, Audit and Negotiation Services by and between INDECS and Claim Doc (the "Agreement") and the June 1, 2015 Joinder Agreement by and among Wirerope, INDECS, and Claim Doc (the "Joinder Agreement"), which speak for themselves, and states that no response is required to those allegations.

3.      Claim Doc denies the allegations in paragraph 3 of the Complaint.

4.      Claim Doc denies the allegations in paragraph 4 of the Complaint.

5.      Claim Doc denies the allegations in paragraph 5 of the Complaint as stated, and refers to the Agreement and Joinder Agreement, which speak for themselves, and states that no response is required to those allegations.

6.      Claim Doc denies the allegations in paragraph 6 of the Complaint, as they make no sense.

7.      Claim Doc denies the allegations in paragraph 7 of the Complaint.

8.      Claim Doc denies the allegation in paragraph 8 of the Complaint.

9.      Claim Doc states that the allegations in paragraph 9 of the Complaint constitute legal or other conclusions as to which no response is required.  To the extent a response may be required, Claim Doc denies the allegations in paragraph 9.

10.     Claim Doc states that the allegations in paragraph 10 of the Complaint constitute legal or other conclusions as to which no response is required.

11.     Claim Doc states that the allegations in paragraph 11 of the Complaint constitute legal or other conclusions as to which no response is required.

- 2 -

12.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the Complaint.

13.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 13 of the Complaint.

14.     Claim Doc admits the allegations in the first sentence and denies the allegations in the second sentence of paragraph 14 of the Complaint.

15.     In response to paragraph 15 of the Complaint, Claim Doc incorporates its answers to the preceding paragraphs.

16.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the Complaint.

17.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the Complaint.

18.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the Complaint.

19.     Claim Doc admits the allegations in paragraph 19 of the Complaint.

20.     Claim Doc denies the allegations in paragraph 20 of the Complaint as stated, and refers to the Agreement, which speaks for itself, and states that no response is required to those allegations.

21.     Claim Doc denies the allegations in paragraph 21 of the Complaint as stated, and refers to the Agreement, which speaks for itself, and states that no response is required to those allegations.

- 3 -

22.     Claim Doc denies the allegations in paragraph 22 of the Complaint as stated, and refers to the Agreement, which speaks for itself, and states that no response is required to those allegations.

23.     Claim Doc denies the allegations in paragraph 23 of the Complaint as stated, and refers to the alleged written request, which speaks for itself, and states that no response is required to those allegations.

24.     Claim Doc denies the allegations in paragraph 24 of the Complaint as stated, and refers to the Plan Document, which speaks for itself, and states that no response is required to those allegations.

25.     Claim Doc denies the allegations in paragraph 25 of the Complaint as stated, and refers to the Agreement, which speaks for itself, and states that no response is required to those allegations.

26.     Claim Doc denies the allegations in paragraph 26 of the Complaint as stated, and refers to the Agreement, which speaks for itself, and states that no response is required to those allegations.

27.     Claim Doc denies the allegations in paragraph 27 of the Complaint as stated, and refers to the Agreement, which speaks for itself, and states that no response is required to those allegations.

28.     Claim Doc denies the allegations in paragraph 28 of the Complaint as stated, and refers to the Agreement, which speaks for itself, and states that no response is required to those allegations.

29.     Claim Doc denies the allegations in paragraph 29 of the Complaint as stated, and refers to the Agreement, which speaks for itself, and states that no response is required to those allegations.

30.     Claim Doc denies the allegations in paragraph 30 of the Complaint as stated, and refers to the Agreement, which speaks for itself, and states that no response is required to those allegations.

31.     Claim Doc denies the allegations in paragraph 31 of the Complaint as stated, and refers to the Agreement, which speaks for itself, and states that no response is required to those allegations.

32.     Claim Doc denies the allegations in paragraph 32 of the Complaint as stated, and refers to the Agreement, which speaks for itself, and states that no response is required to those allegations.

33.     Claim Doc denies the allegations in paragraph 33 of the Complaint as stated, and refers to the Agreement, which speaks for itself, and states that no response is required to those allegations.

34.     Claim Doc denies the allegations in paragraph 34 of the Complaint as stated, and refers to the Agreement, which speaks for itself, and states that no response is required to those allegations.

35.     Claim Doc admits the allegations in paragraph 35 of the Complaint.

36.     Claim Doc admits the allegations in paragraph 36 of the Complaint.

37.    Claim Doc denies the allegations in paragraph 37 of the Complaint as stated, and refers to the Joinder Agreement, which speaks for itself, and states that no response is required to those allegations.

38.    Claim Doc denies the allegations in paragraph 38 of the Complaint as stated, and refers to the Joinder Agreement, which speaks for itself, and states that no response is required to those allegations.

39.    Claim Doc denies the allegations in paragraph 39 of the Complaint as stated, and refers to the Joinder Agreement, which speaks for itself, and states that no response is required to those allegations.

40.    Claim Doc denies the allegations in paragraph 40 of the Complaint as stated, and refers to the Joinder Agreement, which speaks for itself, and states that no response is required to those allegations.

41.    Claim Doc denies the allegations in paragraph 41 of the Complaint as stated, and refers to the Joinder Agreement, which speaks for itself, and states that no response is required to those allegations.

42.    Claim Doc denies the allegations in paragraph 42 of the Complaint.

43.    Claim Doc denies the allegations in paragraph 43 of the Complaint as stated.  A representative of Wirerope stated on May 10, 2016 that Wirerope intended to terminate its relationship with Benefit Captive Re, LLC, its broker.  Claim Doc provided written notice of termination the following day.

44.     Claim Doc denies the allegations in paragraph 44 of the Complaint as stated, and refers to the letter, which speaks for itself, and states that no response is required to those allegations.

45.     Claim Doc denies the allegations in paragraph 45 of the Complaint and incorporates by reference its response to paragraph 43 of the Complaint.

46.     Claim Doc denies the allegations in paragraph 46 of the Complaint as stated, and refers to the letter, which speaks for itself, and states that no response is required to those allegations.

47.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 of the Complaint.

48.     Claim Doc denies the allegations in paragraph 48 of the Complaint.

49.     Claim Doc denies the allegations in paragraph 49 of the Complaint.

50.     Claim Doc denies the allegations in paragraph 50 of the Complaint as stated, and refers to the Letter, which speaks for itself, and states that no response is required to those allegations.

51.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51 of the Complaint, except denies that there was a material breach by Claim Doc.

52.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52 of the Complaint.

53.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 of the Complaint.

54.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54 of the Complaint.

55.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55 of the Complaint, except denies the claimed admissions.

56.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56 of the Complaint regarding retention of money, except denies that Claim Doc has failed to provide any post-termination balance bill defense that it was obligated to provide.

57.     Claim Doc denies the allegations in paragraph 57 of the Complaint as stated, and refers to the Letter, which speaks for itself, and states that no response is required to those allegations.

58.     Claim Doc denies the allegations in paragraph 58 of the Complaint.

59.     In response to paragraph 59 of the Complaint, Claim Doc incorporates its answers to the preceding paragraphs.

60.     Claim Doc states that the allegations in paragraph 60 of the Complaint constitute legal or other conclusions as to which no response is required.

61.     Claim Doc states that the allegations in paragraph 61 of the Complaint constitute legal or other conclusions as to which no response is required.

62.     Claim Doc denies the allegations in paragraph 62 of the Complaint as stated, and refers to the Joinder Agreement, which speaks for itself, and states that no response is required to those allegations.

63.     Claim Doc denies the allegations in paragraph 63 of the Complaint.

- 8 -

64.     Claim Doc denies the allegations in paragraph 64 of the Complaint as stated, and refers to the Agreement, which speaks for itself, and states that no response is required to those allegations.

65.     Claim Doc denies the allegations in paragraph 65 of the Complaint.

66.     Claim Doc denies the allegations in paragraph 66 of the Complaint.

67.     Claim Doc denies the allegations in paragraph 67 of the Complaint.

68.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68 of the Complaint.

69.     Claim Doc denies the allegations in paragraph 69 of the Complaint.

70.     In response to paragraph 70 of the Complaint, Claim Doc incorporates its answers to the preceding paragraphs.

71.     Claim Doc denies the allegations in paragraph 71 of the Complaint as stated, and refers to the Agreement and Joinder Agreement, which speak for themselves, and states that no response is required to those allegations.

72.     Claim Doc denies the allegations in paragraph 72 of the Complaint as stated, and refers to the Agreement and Joinder Agreement, which speak for themselves, and states that no response is required to those allegations.

73.     Claim Doc states that the allegations in paragraph 73 of the Complaint constitute legal or other conclusions as to which no response is required.  To the extent a response may be required, Claim Doc denies the allegations in paragraph 73 of the Complaint as stated.

- 9 -

74.     Claim Doc states that the allegations in paragraph 74 of the Complaint constitute legal or other conclusions as to which no response is required.  To the extent a response may be required, Claim Doc denies the allegations in paragraph 74 of the Complaint as stated.

75.     Claim Doc states that the allegations in paragraph 75 of the Complaint constitute legal or other conclusions as to which no response is required.  To the extent a response may be required, Claim Doc denies the allegations in paragraph 75 of the Complaint as stated.

76.     Claim Doc states that the allegations in paragraph 76 of the Complaint constitute legal or other conclusions as to which no response is required.  To the extent a response may be required, Claim Doc denies the allegations in paragraph 76.

77.     Claim Doc states that the allegations in paragraph 77 of the Complaint constitute legal or other conclusions as to which no response is required.  To the extent a response may be required, Claim Doc denies the allegations in paragraph 77.

78.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 78 of the Complaint.

79.     In response to paragraph 79 of the Complaint, Claim Doc incorporates its answers to the preceding paragraphs.

80.     Claim Doc states that the allegations in paragraph 80 of the Complaint constitute legal or other conclusions as to which no response is required.

81.     Claim Doc states that the allegations in paragraph 81 of the Complaint constitute legal or other conclusions as to which no response is required.

82.     Claim Doc denies the allegations in paragraph 82 of the Complaint as stated, and refers to the Joinder Agreement, which speaks for itself, and states that no response is required to those allegations.

83.     Claim Doc denies the allegations in paragraph 83 of the Complaint as stated, and refers to the Agreement and Joinder Agreement, which speak for themselves, and states that no response is required to those allegations.

84.     Claim Doc states that the allegations in paragraph 84 of the Complaint constitute legal or other conclusions as to which no response is required.  To the extent a response may be required, Claim Doc denies the allegations in paragraph 84 of the Complaint as stated.

85.     Claim Doc states that the allegations in paragraph 85 of the Complaint constitute legal or other conclusions as to which no response is required.  To the extent a response may be required, Claim Doc denies the allegations in paragraph 85.

86.     Claim Doc lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 86 of the Complaint.

## AFFIRMATIVE DEFENSES

Claim Doc sets forth below its affirmative defenses.  By setting forth these defenses, Claim Doc does not assume the burden of proof of any issue, fact, or element of a claim as to which applicable law places the burden on plaintiffs.

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because plaintiffs have not attempted to negotiate with Claim Doc nor submitted their claims to non-binding mediation as required by the Agreement.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, by the equitable doctrines of laches, estoppel, waiver, and unclean hands.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, for failure to mitigate damages.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have not suffered injury in fact.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs have failed to allege facts sufficient to support a claim for attorney's fees or costs.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs materially breached the Agreement and Joinder Agreement by failing and refusing repeatedly to comply with material terms, including but not limited to Sections 8 and 12 of the Agreement and Section 6 of the Joinder Agreement.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs materially breached the Agreement and Joinder Agreement by breaching the covenant of good faith and fair dealing.

## NINTH AFFIRMATIVE DEFENSE

Claim Doc at all times acted in good faith and in a commercially reasonably

manner.

## TENTH AFFIRMATIVE DEFENSE

Claim Doc hereby gives notice that it intends to rely upon such other defenses as

may become available or appear during discovery proceedings in this case and hereby reserves

the right to amend its Answer to assert any such defense.

## JURY TRIAL DEMAND

Claim Doc demands a trial by jury of all issues triable by a jury.

## COUNTERCLAIM

Counterclaim Plaintiff Claim Doc, LLC ("Claim Doc"), for its counterclaim

against Counterclaim Defendants INDECS Corp. ("INDECS") and Wirerope Works, Inc.

("Wirerope"), alleges as follows:

## NATURE OF THE ACTION

1.      The parties to this action contracted for the provision of health benefit claims

auditing services.

2.      Contrary to the terms of the governing contracts, INDECS and Wirerope seek to

burden Claim Doc with the expense of providing post-termination services.

3.      As part of INDECS' and Wirerope's effort to burden Claim Doc with the expense

of providing post-termination services not required by the contracts, INDECS and Wirerope are

holding hostage monies due to Claim Doc for work previously performed under the contracts, a

clear violation of the contracts' express terms.

- 13 -

4.      And, as if this behavior were not sufficiently egregious, INDECS and Wirerope also have conspired to, and indeed did, intentionally and/or maliciously interfere with an existing contract between Claim Doc and certain third parties.

5.      Claim Doc brings counterclaims against INDECS and Wirerope for breach of contract, tortious interference with contract, and civil conspiracy. Claim Doc also brings against Wirerope a counterclaim for quantum meruit/unjust enrichment related to Wirerope's bilking a Claim Doc affiliate of fees owed for the design and setup of Wirerope's 2016-17 health benefits plan.

### JURISDICTION AND VENUE

6.      This Court has original jurisdiction over this action on the basis of diversity of citizenship as provided in 28 U.S.C. §1332.

7.      Venue is proper as provided in 28 U.S.C. §1391.

### FACTUAL BACKGROUND

**The Parties.**

8.      Counterclaim Plaintiff Claim Doc provides claim re-pricing and auditing services to employer and union sponsored self-funded health plans.

9.      Counterclaim Defendant INDECS represents itself to be a third party health care claims administrator, and provides claims management and administration services to self-funded healthcare programs.

10.      Counterclaim Defendant Wirerope is a manufacturing business with over 300 employees.

- 14 -

**Nonparty Benefit Captive Re Designs a Health Benefits Program for Wirerope and Facilitates Wirerope's Hire of Claim Doc and INDECS.**

11.     Nonparty Benefit Captive Re, LLC ("BCR") is a broker for self-funded benefit plans. As a broker, BCR assists employer-sponsored health care benefits programs by designing, recommending, and facilitating contracts with various health care service providers.

12.     BCR is an affiliate of Claim Doc.

13.     For health benefit plans such as those that BCR designs, the design and preparation must occur well prior to enrollment so that enrollment may occur timely the following benefit plan year.

14.     BCR charges monthly fees to its clients throughout the benefit plan year. The monthly fees are based on the number of employees in the plan that BCR designs, and mostly reflects compensation for the upfront setup of the plan, renewals, and implementation. A small portion of the monthly fees also compensates BCR for assistance and reporting throughout the plan year.

15.     BCR sent to Wirerope a written proposal for the design and setup of Wirerope's health benefits plan for the 2014-15 plan year. Wirerope accepted and signed the proposal.

16.     In April 2014, BCR became the broker of record for Wirerope's health program for its employees and eligible dependents.

17.     As Wirerope's broker, BCR implemented the design outlined in the proposal accepted by Wirerope. In so doing, BCR facilitated agreements with health care providers on behalf of Wirerope, including for stop loss coverage, a third party administrator, a pharmacy manager, and claim auditing services.

- 15 -

18.     BCR facilitated for Wirerope agreements with Eye Center of Central Pennsylvania, Family Practice Centers, Susquehanna Endoscopy, Susquehanna Health System hospitals and physicians, and a local durable medical goods provider.

19.     For the 2014-15 benefit plan year, BCR facilitated Wirerope's hiring of Tristar Benefit Administrators as the third party administrator, and Claim Doc for claims review, audit, and negotiations services.

20.     For the 2014-15 benefit plan year, BCR charged Wirerope approximately $6,700 per month throughout the plan year. This number fluctuated, as it reflected the number of employees enrolled in the plan each month.

21.     BCR sent to Wirerope a written proposal for design and setup of Wirerope's health benefits plan for the 2015-16 plan year. Wirerope accepted and signed the proposal.

22.     As Wirerope's broker, BCR implemented the design outlined in the proposal accepted by Wirerope. In so doing, BCR facilitated Wirerope's hiring of INDECS as its third party claims administrator. Claim Doc continued to provide Wirerope with claims review, audit and negotiation services.

23.     For the 2015-16 benefit year, BCR charged Wirerope approximately $5,200 per month throughout the plan year. This number fluctuated, as it reflected the number of employees enrolled in the plan each month.

**Claim Doc and INDECS Enter Into An Agreement for Services.**

24.     INDECS and Claim Doc entered into the Agreement for Claims Review, Audit, and Negotiation Services, effective June 1, 2015 (the "Agreement"). Pls. Ex. A.

25.     The Agreement engages Claim Doc to, "upon INDECS's written request[,] perform Claim Review Services for claims for medical and pharmacy services incurred by members covered by selected Plans for whom INDECS is acting as the Third Party Administrator." *Id.* at ¶1.

26.     "Claim Review Services" is defined in the preamble of the Agreement as "various review, auditing, and negotiating services for medical or pharmacy claims." *Id.* at preamble.

27.     The Agreement provides a compensation formula.  The Compensation provision explains:

> [Claim Doc] shall receive a fee ("Services Fee"), as compensation for services provided hereunder, an amount equal to 12% of the first $100,000 of "billed charges" for a claim for which [Claim Doc] has performed services hereunder and 10% of the excess over $100,000 of billed charges for such claim.  "Billed charges" are the total billed charges billed for the claim prior to any discounts or other reductions.

*Id.* at ¶8.

28.     The Agreement specifies that its initial term is one (1) year, beginning June 1, 2015, through May 31, 2016.  Further, the Agreement "shall renew itself automatically for additional one-year periods of time, unless and until terminated by either Party in accordance with the provisions of this Section 10." *Id.* at ¶10.

29.     The Agreement also provides for the manner in which it can be terminated:

> This Agreement shall terminate as follows:
>
> a.       By either party with Notice.  Either Party to this Agreement may terminate it by giving sixty (60) days' prior written notice thereof to the other Party.
>
> b.       By [Claim Doc] Upon Failure to Pay Fees.  If INDECS and/or a Plan Sponsor

- 17 -

> does not pay the fees set forth in Section 8
> within ten (10) business days of the due
> date, [Claim Doc] may resign upon giving
> five (5) business days prior written notice
> and this Agreement shall immediately
> terminate.

*Id.* at ¶10.

30.  The Agreement includes a provision related to the rights and obligations of Claim

Doc and INDECS upon the termination of the agreement.  It explains:

> **Rights and Duties Upon Termination.**  As of the date of
> termination of this Agreement and the expiration of any run out
> period under any applicable Stop Loss Policy, all rights and
> obligations of the Parties shall terminate, except that (a) [Claim
> Doc] shall continue to perform its obligations under this
> Agreement with respect to any Referred Health Benefit Claim or
> Appeal of a Health Benefit Claim provided that the Plan Document
> continues to name the [Third Party Administrator] or the Plan
> Administrator as a designated decision maker with maximum
> discretionary authority with respect to such Referred Appeals; and
> (b) INDECS, shall pay on behalf of and with funds provided by the
> Plan Sponsors, all fees which are due and owing under this
> Agreement as of the date of termination.

*Id.*

31.  Under the Agreement, a "Health Benefit Claim" is "a claim for benefits filed by a

participant in the Plan, where the request for approval of treatment or services or the rendering of

services or supplies occurred during a Plan Year or calendar year applicable under the term of

this Agreement." *Id.* at ¶2.

32.  Under the Agreement, a "Referred Appeal" is "any appeal of a denied Health

Benefit Claim under the Plan, which shall be referred to [Claim Doc] by the Plan Administrator

after audit under this Agreement by [Claim Doc]." *Id.*

33.     The characteristics of an appeal, in the context of employee benefits, are specified by federal law.  29 C.F.R. §§2560.503-1(h).

34.     An appeal must include a "full and fair review of the claim and the adverse benefit determination." *Id.*

## Wirerope Enters Into a Joinder Agreement with Claim Doc and INDECS.

35.     The Agreement requires that "in order to provide such Claims Review Services to a[n] INDECS customer, the customer shall be required to enter into a Joinder Agreement [] with the Parties hereto." *Id.* at preamble.

36.     On June 1, 2015, Wirerope entered into a Joinder Agreement with INDECS and Claim Doc (the "Joinder Agreement") which incorporates the terms and conditions of the Agreement. Pls.' Ex. B.

37.     By the Joinder Agreement, Wirerope "represent[ed] and warrant[ed] that it is liable for all amounts due [Claim Doc] under the [] Agreement and this Agreement and that it is solvent and financially able to pay all such amounts." *Id.* at ¶5.

38.     The Joinder Agreement obligates Wirerope to ensure that Claim Doc receives payments for its Claims Review Services, as follows:

> …in the event INDECS fails to forward to [Claim Doc] compensation or other payments due hereunder in connection with [the Joinder Agreement] and/or the [] Agreement in a timely manner, upon notice to [Wirerope] by [Claim Doc], [Wirerope] shall make direct payments to [Claim Doc] for any unpaid amounts or future payments due under [the Joinder Agreement], whereupon INDECS shall be relieved of any liability therefor.

*Id.* at ¶6.

39.     The Joinder Agreement provides with respect to termination:

> In the event the Client Services Agreement between [Wirerope]
> and INDECS terminates prior to the expiration of the current plan
> year of [Wirerope's] Health Plan and any run out period under the
> applicable Stop Loss Policy, and [Wirerope] or INDECS on behalf
> of [Wirerope] so requests in writing, [Claim Doc] shall continue to
> provide services to [Wirerope's] Health Plan until the end of the
> current plan year and the run out period, so long as payments due
> under this Agreement are made when due.  This Agreement shall
> survive the termination of the Client Services Agreement between
> INDECS and [Wirerope] until the end of the current plan year,
> after such termination and the end of any applicable Stop Loss Run
> Out Period.

*Id.* at ¶8.

### Wirerope's Relationship with BCR Ends, and Wirerope Bilks BCR of Payment for Services Rendered.

40.     BCR sent to Wirerope a written proposal for the design and setup of Wirerope's

health benefits plan for 2016-17 plan year.  In putting together the proposal, BCR performed all

of the work for the plan setup for that year, such as gathering all data necessary for renewal

quotes for stop loss.

41.     As with the previous proposals, BCR proposed a monthly fee to cover the design

and setup of the plan.

42.     Wirerope did not sign BCR's proposal for the 2016-17 plan year, and, on May 10,

2016, notified BCR by telephone of its intention to terminate the relationship.

43.     Upon information and belief, Wirerope then implemented the entire health

benefits program that BCR had designed for Wirerope for the 2016-17 plan year, except that

Wirerope did not continue its relationship with BCR and its affiliate, Claim Doc.

44.     Wirerope did not compensate BCR in any way for designing and setting up the health benefits program for the 2016-17 plan year.

45.     BCR has assigned to Claim Doc its rights and interest in any claims against Wirerope related to Wirerope's failure to compensate BCR for the design and setup of the health benefit program for the 2016-17 plan year.

**Claim Doc's Relationship with Wirerope and INDECS Ends.**

46.     To avoid any misunderstanding about the relationship between Wirerope and Claim Doc, Claim Doc sent to Wirerope a letter, dated May 11, 2016, terminating their relationship. Pls.' Ex. D.

47.     That Letter explains, in part:

> After July 2, 2016, we will continue to respond to any Referred Appeals beyond the date of termination for those Claims that were audited pursuant to the Agreement, even if the Appeal itself is served on us after the date of termination. However, following July 2, 2016, pursuant to the terms of the Agreement, we will no longer provide balance bill representation or continue to represent those members with balance bills that remain pending.

*Id.*

48.     A balance bill reflects a patient's responsibility to pay the difference between the amount a health care provider charged and the amount that the plan paid that provider. The remaining balance equals the amount of money the auditor determined was not payable under the allowable claim limit.

49.     On May 11, 2016, Claim Doc also provided written notice to INDECS of its intent to terminate the Agreement. Pls.' Ex. C.

- 21 -

50.     The letter indicates that the Agreement would terminate on July 2, 2016. *Id.*

51.     During the life of the Agreement, Claim Doc charged INDECS, and by extension Wirerope, about $417,832.46.   Of that sum, INDECS and/or Wirerope paid only about $303,701.73.

**INDECS and Wirerope Demand that Claim Doc Provide Services Beyond What is Required by the Governing Contracts and Refuse to Compensate Claim Doc for Services Already Rendered.**

52.     Despite the terms of the Agreement, INDECS has asserted that Claim Doc has a post-termination obligation to provide legal defense of post-termination balance bills.   Claim Doc Ex. A.

53.     In an effort to support this contention, INDECS cites language from the Agreement that states that Claim Doc "shall continue to perform its obligations under this Agreement with respect to any Referred Health Benefit Claim or Appeal of a Health Benefit Claim." *Id.*

54.     Claim Doc explained to INDECS that balance bill defense is not a duty upon termination of the Agreement.   Claim Doc Ex. B.

55.     Indeed, nowhere in the "Rights and Duties Upon Termination" section of the Agreement is there any reference to balance bill defense or balance bills generally.  Pls.' Ex. A at ¶10.

56.     Likewise, federal law does not include in its description of "full and fair review" of adverse benefit determinations any reference to balance bill defense.  29 C.F.R. §§2560.503-1(h)(a) and (2).

57.     Nonetheless, INDECS sent to Claim Doc a letter dated July 5, 2016, characterizing Claim Doc's assertion that balance bill defense is not a duty upon termination of the Service Agreement as a "notice of anticipatory breach." Claim Doc Ex. C.

58.     In that correspondence, INDECS also stated the following:

> 1. INDECS will assume responsibility for supplying the services Claim Doc has breached its duty to provide (a legal defense of balance bills with respect to the plan members of Wirerope Works, Inc.) Claim Doc was obligated to provide those services post-termination under ¶1(e) of the Agreement.
>
> 2. INDECS will reserve any funds on hand to do so, in a good faith estimate of the expenses of the services required. Claim Doc's breach eliminates any need to pay over any money to Claim Doc in any case.
>
> 3. Claim Doc will be required to pay any excess costs INDECS incurs to provide legal defense of balance bills for plan members of Wirerope Works, Inc. Should Claim Doc refuse to pay any legal defense costs, INDECS will seek recovery from Claim Doc through legal action.
>
> 4. Claim Doc will provide any claim data necessary, including all correspondence and information of any kind, required to provide a legal defense of balance bills for the plan members of Wirerope Works, Inc.

*Id.*

59.     To date, INDECS has not paid Claim Doc the outstanding balance for services rendered between October 2015 and June 2016, which amounts to at least $114,432.46.

60.     On July 8, 2016, Claim Doc notified Wirerope of its obligation to pay the outstanding balance pursuant to the terms of the Joinder Agreement. Pls.' Ex. E.

61.     Wirerope did not respond.

62.     To date, Wirerope has not paid the outstanding balance.

## INDECS and Wirerope Interfere with Claim Doc's Contract with A Third Party.

63.     Nonparty David Fishbone is the owner of Needham Business Consulting PA, LLC (collectively "Needham").

64.     Between February 1, 2013 and March 25, 2016, Needham was under contract with Claim Doc to provide certain business services.

65.     On March 25, 2016, Needham and Claim Doc entered into a separate agreement (the "Settlement Agreement"), which explains that:

> 6. Commencing on March 10, 2016, Needham shall
> have no contact, directly or indirectly, with
> Wirerope Works, Inc., Gardner Trucking, Inc. and
> Susquehanna Hospital System for the purpose of
> convincing any of them to alter or terminate their
> relationship with Claim Doc, for the same duration
> as payments are made under this settlement term
> sheet. For purposes of satisfying its obligation to
> have no indirect contact with Wirerope Works, Inc.
> for the purpose of convincing it to alter or terminate
> its relationship with Claim Doc, Needham shall
> establish a "Chinese Wall" to isolate itself from
> information about Wirerope Works, Inc.'s choices
> of vendor for the coming year.... [1]

66.     Upon information and belief, after the execution of the Settlement Agreement and while Claim Doc was still making payments under the Settlement Agreement, Needham

---

[1] This language is quoted from the Settlement Agreement, whose terms require it to "be maintained in the strictest confidence." For this reason, the Settlement Agreement has not been attached as an exhibit to the counterclaim.

communicated with representatives of Wirerope and INDECS and advocated that Wirerope replace Claim Doc with an entity known as Claim Watch, LLC ("Claim Watch").

67.     Claim Watch is a competitor of Claim Doc with which Needham is affiliated.

68.     Upon information and belief, subsequent to terminating its relationship with Claim Doc, Wirerope hired Claim Watch as its claims auditor.

## Count I
### (Breach of Contract Against INDECS)

69.     Defendant hereby incorporates by reference each and every allegation in the Counterclaim as though the same were fully set forth herein.

70.     Claim Doc and INDECS entered into the Agreement, which is a valid contract supported by law.

71.     The Agreement requires INDECS to pay Claim Doc as compensation a Services Fee, as defined in the Agreement. Pls.' Ex. A at ¶8.

72.     The Agreement also requires that INDECS shall, upon termination of the Agreement, "pay...all fees which are due and owing under this Agreement as of the date of termination." *Id.* at ¶10.

73.     During the 2015-16 benefit plan year, Claim Doc provided to INDECS and Wirerope the Claim Review Services outlined in the Agreement.

74.     INDECS did not pay all fees due and owing under the Agreement as of July 2, 2016, which was the date of the Service Agreement's termination.

75.     Indeed, to date, INDECS still has not paid Claim Doc the balance due.

- 25 -

76. As a result of INDECS' failure to pay Claim Doc for services rendered, Claim Doc has suffered a loss in the amount of at least $114,432.46.

## Count II
### (Breach of Contract Against Wirerope)

77. Defendant hereby incorporates by reference each and every allegation in the Counterclaim as though the same were fully set forth herein.

78. Claim Doc, INDECS, and Wirerope entered into the Joinder Agreement, which is a valid contract supported by law.

79. The Joinder Agreement incorporates the terms and conditions of the Agreement, including the provisions regarding Compensation and Rights and Duties Upon Termination. Pls.' Ex. A at ¶¶8, 10; Pls.' Ex. B at ¶1.

80. The Joinder Agreement requires that in the event that INDECS fails to forward to Claim Doc compensation or other payments due in connection with the Joinder Agreement or the Agreement in a timely manner, upon notice to Wirerope by Claim Doc, Wirerope shall make direct payments to Claim Doc for any unpaid amounts or future payments due. Pls.' Ex B at ¶6.

81. During the 2015-16 benefit plan year, Claim Doc provided to INDECS and Wirerope the Claim Review Services outlined in the Agreement.

82. INDECS has withheld from Claim Doc compensation for services performed during the 2015-16 benefit plan year.

83. Claim Doc provided Wirerope with notice that, as a result of INDECS' refusal to pay for the services rendered, Wirerope must pay Claim Doc directly. Pls.' Ex. E.

84. To date, Wirerope has not paid Claim Doc the balance due.

85.     As a result of Wirerope's failure to compensate Claim Doc for services rendered, Claim Doc has suffered a loss in the amount of at least $114,432.46.

**Count III**
(Tortious Interference with Contract Against INDECS and Wirerope)

86.     Defendant hereby incorporates by reference each and every allegation in the Counterclaim as though the same were fully set forth herein.

87.     Claim Doc and Needham executed a legally binding Settlement Agreement that prohibited Needham from having contact with Wirerope for the purpose of convincing it to alter or terminate its relationship with Claim Doc during the period when Claim Doc was making payments under the Settlement Agreement.

88.     On information and belief, at all relevant times, INDECS and Wirerope were aware of the existence of the Settlement Agreement and its prohibition on Needham having contact with Wirerope for the purpose of convincing it to alter or terminate its relationship with Claim Doc while Claim Doc was making payments under the Settlement Agreement.

89.     INDECS and Wirerope intentionally and maliciously interfered with the Settlement Agreement by, during the period when Claim Doc was making payments under the Settlement Agreement, communicating with Needham for the purpose of discussing and encouraging the termination of Wirerope's relationship with Claim Doc.

90.     INDECS' and Wirerope's interference with the Settlement Agreement has resulted in damage to Claim Doc, including but not limited to the lost value of the Wirerope account.

## Count IV
### (Civil Conspiracy Against INDECS and Wirerope Works)

91.     Defendant hereby incorporates by reference each and every allegation in the Counterclaim as though the same were fully set forth herein.

92.     INDECS and Wirerope were aware of the existence of the Settlement Agreement and its prohibition on Needham having contact with Wirerope for the purpose of convincing it to alter or terminate its relationship with Claim Doc while Claim Doc was making payments under the Settlement Agreement.

93.     Nonetheless, while Claim Doc was making payments under the Settlement Agreement, INDECS and Wirerope agreed to work with Needham to replace Claim Doc with Claim Watch.

94.     While Claim Doc was making payments under the Settlement Agreement, INDECS and Wirerope communicated with Needham for the purposes of discussing terminating Wirerope's relationship with Claim Doc, and replacing Claim Doc with Claim Watch.

95.     INDECS and Wirerope shared the objective of tortiously interfering with the Settlement Agreement.

96.     As a result of INDECS' and Wirerope's conduct, Defendant has incurred damages, including but not limited to the lost value of the Wirerope account.

## Count V
### (Quantum Meruit/Unjust Enrichment Against Wirerope Works)

97.     Defendant hereby incorporates by reference each and every allegation in the Counterclaim as though the same were fully set forth herein.

98.     BCR assigned to Claim Doc any damages claim that BCR may have against Wirerope arising out of design and setup services for the 2016-17 benefit plan year.

99.     BCR designed for Wirerope a health benefits program for the 2016-17 year.  In so doing, BCR performed all of the work for the plan setup for the year, such as gathering all data necessary for renewal quotes for stop loss.

100.    BCR reasonably expected to receive payment for its design and setup of Wirerope's 2016-17 health benefits plan through Wircrope's payment of monthly fees throughout the plan year, as required by the proposal BCR presented to Wirerope, and as had occurred during the prior two plan years.

101.    Wirerope terminated its relationship with BCR prior to the start of the 2016-17 plan year.

102.    Nonetheless, Wirerope implemented almost the entire health benefits program that BCR designed for Wirerope for the 2016-17 plan year.

103.    To date, Wirerope has not compensated BCR in any way for the design and setup of the plan.

104.    It would be inequitable to allow Wirerope to use the benefits plan that BCR designed and negotiated without compensating BCR for its services.

**WHEREFORE**, Counterclaim Plaintiff Claim Doc, LLC prays for judgment as follows:

(a)     Dismissing the Complaint in its entirety with prejudice;

(b)     Awarding damages on the counterclaims in an amount to be determined at trial;

(c)     Awarding Claim Doc its attorney's fees and expenses; and

   (d)  Awarding such other and further relief to Claim Doc, LLC as this Court

deems just and proper.

          Respectfully submitted,

           *s/ Lisa J. Rodriguez*
          Lisa J. Rodriguez, Esq.
          Courtney Devon Taylor, Esq.
          SCHNADER HARRISON SEGAL & LEWIS LLP
          Woodland Falls Corporate Park
          220 Lake Drive East, Suite 200
          Cherry Hill, New Jersey 08002-1165
          Telephone: (856) 482-5741
          Facsimile:  (856) 482-6980
          lrodriguez@schnader.com
          ctaylor@schnader.com

          David Smith, Esq.
          SCHNADER HARRISON SEGAL & LEWIS LLP
          1600 Market Street, Suite 3600
          Philadelphia, Pennsylvania 19103
          Telephone: (215) 751-2000
          Facsimile:  (215) 751-2205
          dsmith@schnader.com

          *Attorneys for Defendant/Counterclaim Plaintiff*
          *Claim Doc, LLC*

Dated:  September 14, 2016

- 30 -

TD BANK - 4957

Indecs Corporation
Benefit Captive Re

| Date | Type | Reference | Original Amt. | Balance Due | Discount | Payment |
|------|------|-----------|---------------|-------------|----------|---------|
| 6/1/2015 | Bill | WIR-062015 | 5,790.50 | 5,790.50 | | 5,790.50 |

7/1/2015   Discount
Check Amount        5,790.50

**1064**

Wirerope Works Inc.        5,790.50

8/13/15
11,947.89

TD BANK - 4957

Indecs Corporation
Benefit Captive Re

| Date | Type | Reference | Original Amt. | Balance Due | Discount | Payment |
|------|------|-----------|---------------|-------------|----------|---------|
| 7/1/2015 | Bill | WIR-072015 | 5,753.50 | 5,753.50 | | 5,753.50 |

7/1/2015   Discount
Check Amount        5,753.50

**1071**

TD BANK - 4957        Wirerope Works Inc.

EXHIBIT 30
Kronick
CA-5 /31/17

CD 0000037



1099 Wall Street West
Lyndhurst, NJ 07071

**Payment Period: July 2015**

Payable to:

Benefit Captive Re
Attn: Ben Krambeck
PO BOX 42014
Urbandale, IA 50303

| Wirerope Works, Inc. | 311 | 18.5 | $5,753.50 |
|---|---|---|---|
| | | Total: | $5,753.50 |

CD 0000038



1099 Wall Street West
Lyndhurst, NJ 07071

**Payment Period: June 2015**

Payable to:

Benefit Captive Re
Attn: Ben Krambeck
PO BOX 42014
Urbandale, IA 50303

| Wirerope Works, Inc. | 313 | 18.5 | $5,790.50 |
| --- | --- | --- | --- |
| | | Total: | $5,790.50 |

Indeco Corporation

Benefit Captive Re

| Date | Type | Reference | Original Amt. | 8/1/2015 Balance Due Discount | 1103 Payment |
|------|------|-----------|---------------|-------------------------------|--------------|
| 8/1/2015 | Bill | WIR-082015 | 5,735.00 | 5,735.00 | 5,735.00 |

Check Amount  5,735.00

TD BANK - 4957        Wirerope Works Inc.                5,735.00

CD 0000040



1099 Wall Street West
Lyndhurst, NJ 07071

**Payment Period: August 2015**

Payable to:

Benefit Captive Re
Attn: Ben Krambeck
PO BOX 42014
Urbandale, IA 50303

| | | | |
|---|---|---|---|
| Wirerope Works, Inc. | 310 | 18.5 | $5,735.00 |
| | | Total: | $5,735.00 |

Benecsft Captive Re Corporation

| Date | Type | Reference | Original Amt. | Balance Due | Discount | Payment |
|------|------|-----------|---------------|-------------|----------|---------|
| 9/1/2015 | Bill | WIR-092015 | 5,631.50 | 5,531.50 | 9/1/2015 | 5,531.50 |
| | | | | | Check Amount | 5,531.50 |

TD BANK - 4957

Wirerope Works, Inc

5,531.50

1145



1099 Wall Street West
Lyndhurst, NJ 07071


**Payment Period: September 2015**


Payable to:

    Benefit Captive Re
    Attn: Ben Krambeck
    PO BOX 42014
    Urbandale, IA 50303


| | | | |
|---|---|---|---|
| Wirerope Works, Inc. | 299 | 18.5 | $5,531.50 |
| | | Total: | $5,531.50 |



Indica Corpor Yen

| Date | Be | aptive Re | | Original Amt. | | 10/1/2016 | | 1185 |
|------|-----|-----------|---|--------------|---|-----------|---|------|
| 10/1/2ь.ɔ | ype | Reference | | 5,605.50 | | | | |
| | Bill | WIR-102015 | | | Balance Due | Discount | | Payment |
| | | | | | 5,605.50 | Check Amount | | 5,605.50 |
| | | | | | | | | 5,605.50 |

TD BANK - 4957          Wirerope Works Inc.

5,605.50

CD 0000044



1099 Wall Street West
Lyndhurst, NJ 07071

**Payment Period: October 2015**

Payable to:

Benefit Captive Re
Attn: Ben Krambeck
PO BOX 42014
Urbandale, IA 50303

| | | | |
|---|---|---|---|
| Wirerope Works, Inc. | 303 | 18.5 | $5,605.50 |
| | | Total: | $5,605.50 |

CD 0000045



Indeca Corporation

Benefit Captive Re

| Date | Type | Reference |
|------|------|-----------|
| 11/10/2015 | Bill | W/R-112015 |

| | 11/10/2015 | 1222 |
|--|-----------|------|
| Original Amt | Balance Due   Discount | Payment |
| 5,457.50 | 5,457.50 | 5,457.50 |
| | Check Amount | 5,457.50 |
| | | 5,457.50 |

TD BANK - 4957        Wirerope Works Inc.

5,457.50



1099 Wall Street West
Lyndhurst, NJ 07071

**Payment Period: November 2015**

Payable to:

Benefit Captive Re
Attn: Ben Krambeck
PO BOX 42014
Urbandale, IA 50303

| Wirerope Works, Inc. | 295 | 18.5 | $5,457.50 |
|---|---|---|---|
| | | Total: | $5,457.50 |



INDECS CORPORATION

| Date | Type | Reference | Original Amt. | | Balance Due | 12/1/2015 | | Payment |
|------|------|-----------|---------------|---|-------------|-----------|---|---------|
| 12/1/2015 | Bill | WIR-1220015 | 5,365.00 | | 5,365.00 | Discount | | 5,365.00 |

Benefit Captive Re

Check Amount · 5,365.00

TD BANK - 4957

Wirerope Works Inc

5,365.00

1260

CD 0000048



1099 Wall Street West
Lyndhurst, NJ 07071

**Payment Period: December 2015**

Payable to:

Benefit Captive Re
Attn: Ben Krambeck
PO BOX 42014
Urbandale, IA 50303

| | | | |
|---|---|---|---|
| Wirerope Works, Inc. | 290 | 18.5 | $5,365.00 |
| | | Total: | $5,365.00 |

CD 0000049